IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

SAMUEL THOMAS W.,

        Plaintiff,

v.                                                   Civil Action No.
                                                       5:18-CV-207 (DEP)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                 HOWARD D. OLINSKY, ESQ.
300 S. State Street                       MELISSA DELGUERCIO, ESQ.
Suite 420
Syracuse, New York 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH            JEREMY A. LINDEN, ESQ.
United States Attorney              Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on January 29, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

GRANTED.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: February 5, 2019
Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAMUEL THOMAS W.,

                        Plaintiff,

vs.                                         5:18-CV-207

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                        Defendant.

------------------------------------------------------------x

*DECISION* - January 29, 2019

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


A P P E A R A N C E S (by telephone)

For Plaintiff:      OLINSKY LAW GROUP
                    Attorneys at Law
                    300 South State Street
                    Syracuse, New York 13202
                      BY:  MELISSA A. DELGUERCIO, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                    Office of Regional General Counsel
                    26 Federal Plaza
                    New York, New York 10278
                      BY:  JEREMY A. LINDEN, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1 THE COURT: Thank you both for excellent and
2 spirited arguments.
3 I have before me a request for judicial review of
4 an adverse determination by the Acting Commissioner pursuant
5 to 42, United States Code, Sections 405(g) and 1383(c)(3).
6 The background is as follows.
7 The plaintiff was born in August of 1976 and is
8 currently 42 years old. He was forty years old at the time
9 of the hearing in this matter and 37 years old at the time of
10 the alleged disability onset, which was claimed to be
11 November 7, 2013.
12 He has a high school education. He lives in
13 Marathon, New York, with a girlfriend and two children, sons
14 that were 11 and 15 years of age at the time of the hearing.
15 He has two other children that were in college at the time of
16 the hearing.
17 The plaintiff has been variously described as
18 either being 5-foot 11-inches or 6-foot 0-inches in height,
19 and between 261 pounds and 275 pounds. He apparently had a
20 driver's license at one point but may have lost it. He is an
21 online minister. That's at page 378. He last worked in
22 2014, although at page 222 of the Administrative Transcript
23 it is suggested he last worked in August of 2013. There was
24 a conflict between the written records and his hearing
25 testimony.

1          Plaintiff was an office manager and photo editor
2   for a business run by his mother between February 2012 and at
3   least August 2013.  Prior to that he worked as a laborer in
4   what I believe was a landscaping business from March 2005 to
5   June 2006, and as a braider of nylon and rope from
6   October 2007 to February 2008.  He was also a pipefitter and
7   a threader.  It appears that there may have been a
8   significant hiatus in his employment history; it was
9   difficult to piece together, quite honestly.
10          Plaintiff suffers physically from a lumbar spine
11  disorder with radiculopathy.  He was injured in the Navy in
12  1995 and aggravated his back injury in 2001.  That's at
13  page 584.  The pain and numbness from the back injury radiate
14  into his legs bilaterally.  He also has complained of some
15  thoracic pain.
16          He has treated with his primary care provider at
17  Marathon Family Health Network, Dr. Douglas Rahner, and
18  various nurse practitioners there, also a pain specialist,
19  Dr. Ralph Ortiz, from 2013 to 2016; Dr. Xiao Fang from 2009
20  to 2012; and neurosurgeon Dr. Khalid Sethi from 2008 to 2011.
21          Dr. Fang described at one point the plaintiff's
22  condition as stable.  He has undergone pain management and
23  palliative strategies, along with epidural injections and
24  some physical therapy.  There are various reports of antalgic
25  gait, marked antalgic gait, although there are other entries

1  where his gait is observed to be normal and unremarkable.
2  There has been no recommendation of surgery.  The plaintiff
3  does use a cane when the pain requires it per doctor's
4  instructions, and he testified that cold weather aggravates
5  his condition.
6        Mentally plaintiff was diagnosed as suffering from
7  PTSD since age 19, including in the Navy.  That's at page 42
8  and 52.  He has had no specialized treatment.  He has also
9  complained of depression and anxiety.  He has a twenty year
10  history of anxiety according to 607 of the Administrative
11  Transcript.  It appears to be managed on medications.  That's
12  at 602.
13        Plaintiff testified he dislikes large crowds,
14  although he states that he is able to go to Walmart and
15  places of that nature.  Plaintiff declined the suggestion
16  that he undergo counseling.  That's at 603.  He testified
17  that he has dreams and nightmares.
18        In terms of medication, plaintiff is on Omeprazole
19  for heartburn, Oxymorphone, Citalopram for anxiety, Naproxen,
20  Ibuprofen, Oxycodone, and Opana.  He has also been on
21  Flexeril, Tramadol and Celexa.
22        Plaintiff is a smoker and smokes one pack of
23  cigarettes per day.  In terms of daily activities he does
24  some vacuuming, some laundry, some cooking, some cleaning.
25  He can shop.  He hunts, although he testified he uses a bench

1  rest for his firearm.  He can take care of his personal
2  hygiene.  He watches television, reads, socializes, and he
3  has a hobby of tattooing.
4           In terms of procedural history, the plaintiff
5  applied for Supplemental Security Income, or SSI, benefits on
6  October 16, 2014, alleging that he suffers from lumbago
7  thoracic spine pain and chronic pain due to trauma, alleging
8  an onset date of November 7, 2013.
9           A hearing was conducted on October 20, 2016 by
10 Administrative Law Judge Lisa B. Martin.  ALJ Martin issued a
11 decision on December 27, 2016 finding the plaintiff was not
12 disabled at the relevant times and, therefore, ineligible for
13 SSI benefits.  On December 20, 2017 that became a final
14 determination of the Agency when the Social Security
15 Administration Appeals Council denied plaintiff's request for
16 review.
17          In her decision ALJ Martin applied the familiar
18 five step sequential test for determining disability.
19          At step one she concluded plaintiff had not engaged
20 in substantial gainful activity since the date of his
21 application on October 16, 2014, although she noted that
22 plaintiff did perform some work in 2014.
23          At step two she concluded that plaintiff suffers
24 from severe impairments that provide at least some limitation
25 on his ability to perform work-related functions, including

1 lumbar spine disorder with radiculopathy, obesity, depression
2 and anxiety.
3 　　　　At step three ALJ Martin concluded the plaintiff's
4 conditions do not meet or medically equal any of the listed
5 presumptively disabling conditions set forth in the
6 Commissioner's regulations, specifically considering listings
7 1.00, 4.00, 9.00, 12.04, 12.06, and his obesity pursuant to
8 the relevant Social Security ruling.
9 　　　　The Administrative Law Judge next considered all of
10 the evidence in the record and concluded that plaintiff has
11 the residual functional capacity, or RFC, to perform light
12 work with exceptions for both physical and mental
13 limitations, including as follows.
14 　　　　"The claimant needs a position change opportunity
15 as often as every 45 minutes for one to two minutes, he must
16 not perform any ladders, ropes or scaffolds climbing, and he
17 is limited to occasional postural motions otherwise.  He must
18 avoid all dangerous work hazards (unprotected heights and
19 exposed moving machinery)" -- and there is a word missing, I
20 think avoid is the word, "all extreme heat, humidity and cold
21 conditions.  He is limited to work that is detailed, but not
22 complex, and does not involve exposure to crowded work
23 settings (e.g., movie theater settings where crowds gather
24 around the work station).  The claimant can choose to use a
25 one-handed cane when walking."

1          Applying that RFC at step four, Administrative Law
2  Judge Martin concluded that plaintiff is unable to perform
3  his past relevant work.
4          At step five the Administrative Law Judge concluded
5  that if the Medical-Vocational guidelines were applied and
6  plaintiff has the residual functional capacity to perform a
7  full range of light work, a finding of no disability would be
8  compelled by grid Rule 202.21.  Concluded, however, that the
9  additional limitations erode the job base on which the grids
10 are predicated and, therefore, elicited testimony of a
11 vocational expert and concluded based on that testimony that
12 plaintiff is capable of performing work available in the
13 national economy in sufficient numbers, including as an
14 information clerk and a rental clerk.
15         And he testified based on his knowledge, although
16 the Dictionary of Occupational Titles, or DOT, did not
17 specifically address the change of position portion of the
18 RFC, but based on his education and experience the vocational
19 expert testified that those two positions would allow for the
20 required change of position.  The ALJ therefore concluded the
21 plaintiff was not disabled at the relevant time.
22         As you know, my task is limited.  The standard that
23 I must apply is extremely deferential.  I must inquire as to
24 whether the determination results from the application of
25 correct legal principles and is supported by substantial

1   evidence. Substantial evidence is defined as such relevant
2   evidence as reasonable minds might accept as adequate to
3   support a conclusion.
4       The backdrop against which I apply those standards
5   is that it is plaintiff's burden through the RFC in step four
6   to substantiate that he suffers from limitations that
7   preclude his ability to perform work functions. That is
8   *Poupore*, Second Circuit's decision in *Poupore* clarified that.
9       Mentally, the plaintiff complains that there are no
10  medical opinions concerning plaintiff's mental condition and,
11  therefore, there is a gap in the record. The record,
12  however, shows that plaintiff suffers from extremely minimal
13  limitations from a mental point of view. His only treatment
14  for that condition comes from the Marathon Family Health
15  Network, and if you review their records it shows that in
16  most instances he presented as alert, fully oriented, with no
17  depression, anxiety or agitation reported. Screenings for
18  depression and anxiety during those visits were generally
19  negative. There were few complaints of anxiety and
20  depression.
21      Statement at page 602, the plaintiff was doing well
22  on medications from a mental point of view. He had a twenty
23  year history of working despite his alleged mental condition.
24  No specialized treatment. He declined counseling. He
25  stated -- or the doctors or physician assistants or nurse

1 practitioners stated the plaintiff was doing well from a
2 mental point of view on medications, including at 600, 602
3 and 612 of the Administrative Transcript.
4 Plaintiff testified that he can shop at Walmart
5 despite his crowd issues, which seem to be the primary
6 complaint when it comes to mental conditions. The RFC
7 accommodated this, the need to avoid crowds. Although
8 normally medical opinion might be required, the case law,
9 including *House against Astrue,* which is a case that
10 plaintiff cited, I believe, does indicate that the
11 Administrative Law Judge can use common sense and rely on
12 other nonmedical opinions if there is little proof, again
13 with plaintiff bearing the burden of proof on this issue.
14 From a physical point of view, plaintiff has
15 undergone testing for his back condition. There is MRI
16 testing results from May 15, 2007 and August 30, 2010, as
17 well as a CT scan from April 7, 2014. All report modest
18 findings of DDD, or degenerative disk disease, small bulges
19 at L5-S1 and L4 and L5 with no central canal stenosis.
20 Plaintiff stated that he was able to work with the
21 pain with his mother. That's at page 302. That his pain is
22 controlled with medication. His activities of daily life are
23 somewhat robust, including hunting, cooking, shopping. A
24 great deal was made of the lifting requirement of light work.
25 Light work, of course, requires lifting no more than

20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds.

When you piece together plaintiff's hearing testimony, as well as Dr. Rahner's opinion, although vague, that indicates that plaintiff at least on a rare basis can lift up to 50 pounds, and Dr. Jenouri's opinion, as well as consideration of plaintiff's activities of daily living, his modest treatment and that type of evidence, I find that the lifting requirement, among others, is supported by substantial evidence.

I think what distinguishes this case from cases like *Selian* and *Curry*, although you have to be careful applying *Curry* because it predates *Poupore*, and when the burden of proof was clearly assigned at the RFC level to the plaintiff, what distinguishes those cases from this one is that Dr. Jenouri's report is not the sole source of evidence concerning the lifting requirement, but it is generally consistent with the other evidence. And so I agree with defendant's counsel that cases like *Johnson versus Colvin* and *Pellam versus Astrue* are more closely aligned and support the reliance on Dr. Jenouri's findings.

The treating source argument was raised in plaintiff's brief concerning Dr. Rahner. Administrative Law Judge Martin explained thoroughly at page 20 why she accorded only partial weight. She did not totally discount

Dr. Rahner's opinion and did, in fact, include some of the limitations set forth in that opinion in many respects, including sitting, for example, does support the RFC. It is a check-the-box form which courts, including *Halloran versus Barnhart*, have said are marginally useful without explanation to support the box checking.

I went through very carefully the records from Marathon Family Health which show that virtually on every occasion that plaintiff treated there, he was seen by a nurse practitioner or physician's assistant and not Dr. Rahner, and it was proper as one of the factors of the regulations to consider the treatment relationship between the provider and the patient.

In this case, of course, Dr. Rahner was not one of the specialists that plaintiff saw. He is a general practitioner, a family doctor. It was noted by the Administrative Law Judge that Dr. Rahner's opinions were even more restrictive than plaintiff testified to at his hearing. They're also not well supported by treatment notes. And contrary to, of course, Dr. Jenouri's consultative report which supports the RFC.

So I note also that Dr. Rahner indicates that plaintiff's condition has been the same and has not changed since November 7, 2013. That's at 772. And it was noted that plaintiff worked into 2014, according to his hearing

testimony at page 33.

So it doesn't appear, although plaintiff's counsel argued, that there was deterioration. I didn't see it in my review of the records, which indicated that his conditions are fairly well controlled by medication. His care was fairly conservative; no surgery was recommended.

And so, in sum, when you add to it the modest MRI and CT findings, the rejection of Dr. Rahner's medical source opinions, to the extent that it was rejected, is well explained and proper and supported by substantial evidence. The RFC was supported by substantial evidence. And since the vocational expert's testimony was based on a hypothetical that approximated the RFC determination, the Acting Commissioner's finding that plaintiff was not disabled at the relevant times is proper and supported by substantial evidence.

I will, therefore, grant judgment on the pleadings to the defendant and order dismissal of plaintiff's complaint.

Again, thank you both for excellent presentations, both written and verbal, and I enjoyed working with you on this case. Have a good day.

\*          \*               \*

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                                          _____
                                          EILEEN MCDONOUGH, RPR, CRR
                                          Federal Official Court Reporter